THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RONALD W. UPPOLE, Defendant-Appellant.
Third District   No. 3—91—0280

Opinion filed April 9, 1992.—Rehearing denied June 2, 1992.

282

Thomas W. Funk, of Lincoln, for appellant.

Erik I. Blanc, State's Attorney, of Pekin (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HAASE delivered the opinion of the court:

The defendant was convicted of the murder of his wife and sentenced to 50 years in the Department of Corrections. The defendant appeals. He claims the trial court erred in conducting *voir dire*, failed to provide him reasonable access to a law library, and the court's sentence was excessive. We affirm.

On August 2, 1978, the defendant shot and killed his estranged wife, Norma Uppole. The defendant entered the couple's former marital residence with a gun and waited for his wife to return. When the wife returned home, the defendant shot her three times. The defendant then brought his daughter into the room and shot the wife seven more times. The defendant then handed the gun to his daughter and asked her to take his life. The daughter refused. The defendant was ultimately arrested and indicted for the murder of his wife. Pursuant to a stipulation by the parties, the defendant was held unfit to stand trial and was committed to the Illinois Department of Mental Health and Developmental Disabilities. After numerous hearings over a span of 12 years, the defendant was finally found fit to stand trial. The defendant was reindicted for the murder of his wife and pled not guilty.

On May 22, 1990, the defendant filed a motion to proceed *pro se*. The court granted the defendant's motion, but ordered the office of the Tazewell County public defender to be available and ready as standby counsel to assist the defendant at his trial. The court admonished the defendant that the charges he faced were serious and he would be given no special treatment. The defendant stated he understood and stated he still wished to proceed *pro se*. During the course of the proceedings, the court admonished the defendant several times that standby counsel was available to take over his defense and that he would receive no special treatment from the court. The defendant persisted in defending himself.

On June 14, 1990, the defendant filed a motion requesting the court to order standby counsel to bring him legal materials for his defense at the Tazewell County jail. The court denied the motion, stating "no public defender will ever be appointed by this court to be a go-fer." Instead, the court informed the defendant that he could file a list of books he desired and the books would be delivered to him at the jail. The defendant then requested a copy of the entire six-volume set of the Illinois revised statutes. The court refused the defendant's request, but ordered that "any specific area that he feels he needs will be provided and always has been provided within 24 hours."

On September 10, 1990, the case was called for jury trial. The court ruled that it would conduct all questioning of prospective jurors, but would allow the parties to submit written questions they wished the court to ask. The defendant submitted two pages of written questions. The first page the judge agreed to cover. The second page the court refused to ask as proffered. The court ruled these questions were "clearly outside of what normally is asked in a criminal case." The second page of the defendant's proffered questions read as follows:

(1) "Do you believe that the Bible is true in its entirety or all of its words?"

(2) "Do you believe there is a spirit world completely alive and active at this time?"

(3) "Do you believe a spirit can manipulate a person to do its desires?"

(4) "Do you believe there is a spirit world that is completely evil in its actions?"

Instead, the court asked prospective jurors about the general subject matter presented by the defendant's questions:

(1) "Do you consider yourself a religious person?"

(2) "Are you familiar with the Bible?"

(3) "And do you believe that regardless of what your religious background or training has been, whatever your familiarity with the Bible, that you can follow the law even if it might conflict with what you believe the Bible says?"

At trial, the defendant testified that he saw the face of a pernicious spirit and that he was turned over to the control of the spirit. It was this spirit, the defendant stated, that made him fire the first three shots at his wife; the seven shots he fired after bringing his daughter into the room, however, were fired as a voluntary act according to the defendant. On cross-examination, the defendant also admitted that the summer of 1990 was the first time he had men-

tioned the pernicious spirits because he could not find a Christian psychiatrist to help him bring it out before that time.

The defendant called Virgil Hartstock, who holds an associate's degree in theology, to read certain passages from the Bible regarding pernicious spirits and their ability to take control of humans. The defendant then called Rev. Bobbie Lounsberry, the defendant's pastor at the time of the murder, who testified that the defendant felt helpless in his marital situation and that he had sought help from Lounsberry. The defense then rested. The jury was instructed as to the law. The jury returned a verdict of guilty.

At sentencing, the State requested the court to take judicial notice that at the time of the murder, a criminal complaint was pending against the defendant charging the defendant with aggravated assault and battery against his wife. The court took notice of the pending charges and found that this was an aggravating factor. The court also found there were other aggravating factors, including the serious harm caused to the defendant's daughter, the defendant's history of criminal activity, the necessity to deter others from committing this type of crime, and that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. The court sentenced the defendant to 50 years in the Department of Corrections. The defendant raises several contentions of error.

■ First, the defendant claims the trial court erred in conducting *voir dire* by failing to ask prospective jurors their feelings about the spirit world. As the defendant points out, if a prospective juror were to indicate he did not believe in pernicious spirits, "[T]hen clearly that juror would be predisposed against his defense—if there is no spirit world then certainly there are no spirits who could have taken control of the defendant's actions." Although logically correct, the defendant's argument is utterly without legal merit.

It is well established that the purpose of *voir dire* is to select a fair and impartial jury; it is not to be used as a means of preeducating or indoctrinating a jury or as a means of impaneling a jury with particular predispositions. (*People v. Teague* (1982), 108 Ill. App. 3d 891, 439 N.E.2d 1066.) In the case at bar, the defendant argues he had a right to a jury predisposed to believe in the spirit world. No such right exists. The trial court inquired as to the venire's general feelings about religion and the Bible. The questions posed by the court were fairly worded and sufficiently thorough to uncover any possible biases or prejudices of the venire. In sum, the trial court did not err in conducting *voir dire*.

Next, the defendant claims he was denied the opportunity to effectively represent himself because he had limited access to a law library and legal materials. The defendant bases this claim on the court's refusal to provide him with all six bound volumes of the Illinois revised statutes.

In *People v. Heildelberg* (1975), 33 Ill. App. 3d 574, 338 N.E.2d 56, this court noted that an incarcerated *pro se* defendant does not possess a right of access to a complete jail library:

"Where a prisoner in custody knowingly and voluntarily elects to manage his own defense, he relinquishes many of the traditional benefits associated with the right to counsel. The constitution does not require in the case of a prisoner who elects to represent himself *pro se* that he be exempted from regular jail procedures and searches, and no duty exists, where such facilities are not commonly available in a common jail, to provide him law books, or private telephones, or unlimited access to witnesses, investigators or other items he may feel necessary. By electing to represent himself, a prisoner in custody may not expect favored and privileged treatment even though the result may be that he is less effective as his own attorney." 33 Ill. App. 3d at 591.

See also *People v. George* (1980), 85 Ill. App. 3d 443, 406 N.E.2d 939.

■■ In the case at bar, the court entered a standing order that the defendant need only write down the area or areas of the law he wished to research, or specific citations to the materials he desired, and the materials would be delivered to the jail within 24 hours. The only request that was not honored was for the entire six-volume set of the Illinois revised statutes. The trial judge gave the defendant a copy of West's Illinois Criminal Law and Procedure (West Publishing Co., 1991). This gave the defendant access to the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 1—1 *et seq.*), and the Illinois Supreme Court rules on criminal proceedings (134 Ill. 2d Rules 401 through 663). In addition, the trial judge gave the defendant his own personal copy of E. Cleary & M. Graham, Handbook of Illinois Evidence (3d ed. 1979). The defendant made requests for copies of certain criminal cases and these cases were provided to him within 24 hours. Although we decline to set specific guidelines for exactly what type of access to legal materials an incarcerated *pro se* defendant must be afforded, we find that the access the trial court afforded the defendant in the case at bar was well within constitutional requirements.

In making this ruling, we feel it is important to note that the trial court ordered standby counsel to be ready to take over the defendant's defense at any point in the proceedings. The defendant was repeatedly admonished that the charges he faced were serious and that standby counsel was ready to conduct his defense. Nonetheless, the defendant rejected the services of the Tazewell County public defender and insisted on proceeding *pro se*. In *Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525, the United States Supreme Court ruled that defendants have a constitutional right to proceed *pro se*. The Court also recognized that without the aid of counsel, the ability of a defendant to present his case may also suffer; "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." 422 U.S. at 835, 45 L. Ed. 2d at 581, 95 S. Ct. at 2541.

In a similar vein, the United States Supreme Court in *Bounds v. Smith* (1977), 430 U.S. 817, 52 L. Ed. 2d 72, 97 S. Ct. 1491, ruled that an incarcerated defendant must be provided with *either* an adequate law library *or* adequate assistance from a person trained in the law. In the case at bar, the defendant was repeatedly offered the services of a person trained in the law. The defendant makes no claim that the person appointed was incompetent or otherwise unable to defend him properly. Instead, the defendant claims he possessed the right to reject the services of counsel and also to have access to a wide range of legal materials. As the Supreme Court noted in *Faretta* and *Bounds*, and as this court noted in *Heildelberg*, no such right exists.

■ The defendant also claims the court erred in not ordering standby counsel to deliver law books to him at the county jail. The defendant has failed to support this contention with argument or citation to authorities as required by Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)), and this contention, therefore, is deemed waived. *People v. Sanford* (1983), 116 Ill. App. 3d 834, 842.

Even if we were to consider this argument on the merits, the defendant would not prevail. A trial court possesses broad discretion in relation to the appointment of counsel for advisory or other limited purposes. (*People v. Partee* (1987), 157 Ill. App. 3d 231, 247, 511 N.E.2d 1165, 1177.) In *Partee* for example, the defendant decided to proceed *pro se*, but requested the court to appoint standby counsel to act as his legal advisor. The court refused, noting that the defendant had the right either to be represented by counsel or proceed *pro se*, but not both. (See *McKaskle v. Wiggins* (1984), 465 U.S. 168, 177, 79

L. Ed. 2d 122, 132-33, 104 S. Ct. 944, 950.) On appeal, the First District Appellate Court affirmed the trial court's ruling and noted that a trial court's rulings regarding duties and functions of standby counsel will not be disturbed on appeal unless they constitute an abuse of discretion. (*Partee*, 157 Ill. App. 3d at 247, 511 N.E.2d at 1176.) In the case at bar, the trial court did not abuse its discretion in refusing to order standby counsel to deliver books to the defendant in the Tazewell County jail. Standby counsel was an attorney licensed to practice law, not a delivery boy.

■ Finally, the defendant claims the trial court erred in relying on improper factors in sentencing the defendant to an extended term. Specifically, the defendant claims the court erred in considering (1) the fact his wife was the complaining witness against him in a pending criminal case; (2) the fact the defendant shot the wife seven times while his daughter looked on; and (3) the fact the defendant had a history of violent criminal behavior towards his wife. The defendant's contentions are without merit.

Sentencing is a matter of judicial discretion, and absent an abuse of discretion on the part of the trial judge, a sentence will not be altered upon review. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) In the case at bar, the trial court found that the defendant murdered his wife in a heinous, cold-blooded and shocking manner. A review of the record reveals that the court was particularly disturbed by the fact that after the defendant shot the wife in an upstairs bedroom, he went downstairs and dragged his young daughter to the bedroom, held her there against her will, and then shot the wife seven more times while the daughter looked on. When combined with the other factors noted by the trial court, the court's sentence was entirely proper.

Accordingly, the judgment of the circuit court of Tazewell County is hereby affirmed.

Affirmed.

BARRY, P.J., and McCUSKEY, J., concur.