NOTICE
Decision filed 05/12/20. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2020 IL App (5th) 180055-U

NO. 5-18-0055

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 17-CF-104 |
| | ) | |
| THOMAS CLAY JR., | ) | Honorable |
| | ) | Richard A. Brown, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE OVERSTREET delivered the judgment of the court.
Justices Moore and Wharton concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Order denying motion to vacate guilty plea affirmed where circuit court fulfilled its duty to investigate potential conflict of interest that was brought to its attention early in the proceedings, circuit court applied the correct legal standard in reaching its conclusion, and defendant failed to prove defense counsel operated under an actual conflict of interest.

¶ 2   The defendant, Thomas Clay Jr., appeals the February 8, 2018, order of the circuit court of Randolph County that denied his motion to vacate guilty plea. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4   On June 26, 2017, the State charged the defendant, by information, with burglary, in violation of section 19-1(a) of the Criminal Code of 2012. 720 ILCS 5/19-1(a) (West 2016). The

1

information alleged, *inter alia*, that on June 23, 2017, the defendant, without authority, knowingly entered a building in Sparta, Illinois, with the intent to commit a theft therein.

¶ 5 On June 26, 2017, the defendant's first appearance was conducted before the Honorable Eugene Gross. The circuit court asked the defendant if he intended to retain private counsel. The defendant responded, "I don't know what to do." The circuit court asked, "Would you like for me to appoint the public defender for you at this point in time?" The defendant replied, "I don't— because they're not going to fight for me. This is my life. This is not what it seems to be. *** I don't know what to do." The circuit court informed the defendant, "You can always ask to have your lawyer relieved. Okay. You can represent yourself. You have in the past. I think you were here last week representing yourself." The defendant responded that the problem with proceeding *pro se* was "they have no lawbooks downstairs." The circuit court indicated that the defendant could opt to allow the public defender to file any necessary motions, then proceed *pro se* at trial. The circuit court stated, "I just want to make sure your rights are protected." The circuit court offered to grant the defendant one week to decide, then resume the matter at a status hearing. The defendant accepted the circuit court's offer.

¶ 6 On July 5, 2017, a status hearing was held before the Honorable Richard Brown. The circuit court observed that the defendant's first appearance was before Judge Gross and indicated that the current order of business was to get an update on the defendant's attorney. The circuit court informed the defendant, "I know in a previous case you wanted to represent yourself, but I'm sure Judge Gross advised you, you have a right to be represented by an attorney, and if you can't afford to hire an attorney, this court must appoint an attorney to represent you free of charge." The defendant acknowledged the same. The prosecutor told the defendant, "We can't give you advice, Tommy." The defendant replied, "Yeah, I know that." The prosecutor stated, "But, you

can always take the public defender, and if you don't like the way things are going, you've always got the right to represent yourself." The defendant indicated, "Yeah, I know that, too."

¶ 7 The circuit court informed the defendant, "I'm going to appoint Attorney James Kelley to represent you." The defendant immediately protested, stating, "I do not want James Kelley representing me. That's my issue is James Kelley, you know what I'm saying? It's like he doesn't want—it's my life we're dealing with, you know what I'm saying?" The circuit court stated, "So I don't follow you on Mr. Kelley. He hasn't done anything in the case."

¶ 8 The colloquy continued as follows:

"DEFENDANT CLAY: That's why he–I mean, he represented me before, and I feel like, you know, we just kind of clashed a little bit, and I just don't think I'm going to get everything out of him that I need out of him.

THE COURT: Well, that's—

DEFENDANT CLAY: Is there another—is there another—is there any other public defenders [*sic*]?

THE COURT: No, we only have one public defender, and he's paid by Randolph County.

DEFENDANT CLAY: I thought they had assistant public defender [*sic*] or—

THE COURT: They have no assistant public defender. And I can see of no conflict that would keep James Kelley from representing you on this burglary charge. The only time we appoint other lawyers is when there's a conflict of interest.

DEFENDANT CLAY: Well, technically it is. I mean, I just haven't got to that. I mean, he tried to prosecute me before, too, so that is a conflict of interest.

THE COURT: He didn't try to prosecute you in this case.

3

DEFENDANT CLAY: No, but he's prosecuted me in the past.

THE COURT: I might have represented you before. I don't know.

DEFENDANT CLAY: Yes, you have.

THE COURT: Yeah. So that's no conflict for me being the judge in the case.

DEFENDANT CLAY: Technically it is, your Honor.

THE COURT: Well, I understand that's what you say, but that's not what the law says. I have to follow the law.

DEFENDANT CLAY: Okay. But I switched judges before because of this situation.

THE COURT: Uh-huh.

MR. WALKER: And you have the right to switch judges now—

THE COURT: You have a right to switch judge [*sic*].

MR. WALKER: —but there's a piece of paper that you have to file to do it that I know that Mr. Kelley will know how to do, but it has to be in writing, Motion for Substitution of Judge. You have an automatic right to do that. That's why it would help to have an attorney at least to some degree.

THE COURT: Here's the thing, Tommy, I can't appoint another lawyer for you because Mr. Kelley's being paid by Randolph County to represent persons who can't afford to hire a lawyer.

DEFENDANT CLAY: Yes, sir.

THE COURT: Now, should you decide later you want to represent yourself, you have a right to present that to the Court, and the Court has to decide whether to release Mr. Kelley from the case. But I think at this time the Court will appoint legal counsel to

4

represent you. As to a motion for substitution of judge, he—as Mr. Walker says, well, he'll know immediately. I kept forms in a file folder when I was the public defender—

DEFENDANT CLAY: Yes.

THE COURT: —for such purpose. I'm sure he would have the same thing. So you need to talk to him. If you don't—and then if you decide, well, I don't—I want to represent myself, you can explore that right. You can bring that to the Court's attention and the Court will make the final decision as to whether or not you can represent yourself. So that's what we're going to do today. ***"

¶ 9 On July 5, 2017, the circuit court entered an order appointing James Kelley to represent the defendant. On July 24, 2017, before the Honorable Thomas Cannady, the defendant—represented by James Kelley—waived a preliminary hearing.

¶ 10 On September 28, 2017, a plea hearing was conducted before the Honorable Richard Brown, with James Kelley representing the defendant. At the plea hearing, the State informed the circuit court that the defendant intended to plead guilty to the charge as alleged, a Class 2 burglary. The State indicated that the offense was nonprobationable and the defendant was eligible for an extended term based on his previous conviction in case number 08-CF-158. The State set forth the negotiated disposition of five years in the Illinois Department of Corrections (DOC), with two years of mandatory supervised release (MSR), with court costs and restitution to be waived. Attorney Kelley and the defendant both agreed with the accuracy of the terms of the plea as presented by the State.

¶ 11 The circuit court enumerated the rights the defendant would relinquish by pleading guilty. The defendant indicated that he understood. The circuit court advised the defendant that as a result of the guilty plea, the sentence for any future conviction may be increased or there may be a greater

5

possibility of the imposition of a consecutive sentence. The circuit court further advised the defendant that there may be registration requirements to restrict where he may go, work, or reside and that his ability to obtain housing, employment, firearms, occupation licenses, or a driver's license may be impacted. The defendant indicated that he understood and that he still wished to plead guilty.

¶ 12    The circuit court asked the defendant, knowing what he was charged with, the possible and actual penalties, and the rights he would give up if he entered a plea, how he wished to plead to the charge. The defendant replied, "Guilty." The circuit court asked the defendant if anyone had threatened him, intimidated him, or forced him in any way to plead guilty against his own free will. The defendant replied in the negative. The defendant further indicated that no promises were made to entice him to plead guilty. The circuit court found the defendant knowingly and voluntarily entered a guilty plea.

¶ 13    The State presented the factual basis, with no objection by Kelley or the defendant. The circuit court found the factual basis supported the guilty plea, found the defendant guilty of burglary, sentenced the defendant to five years in the DOC with two years of MSR, and entered judgment on the conviction and sentence. The circuit court advised the defendant of his right to appeal and the requirements associated with a motion to withdraw the guilty plea. On September 28, 2017, the guilty plea was entered, and on September 29, 2017, the circuit court entered a judgment sentencing the defendant as set forth in the plea.

¶ 14    On October 10, 2017, the defendant filed, *pro se*, a motion to withdraw guilty plea and vacate sentence. Attached to the motion was a letter written by the defendant, alleging ineffective assistance of counsel. The letter alleged that attorney Kelley failed to watch a "supposed video" that allegedly depicted the defendant committing a burglary, notwithstanding that the defendant

6

requested him—both orally and in writing—to do so. The letter further alleged that attorney Kelley failed to advise the defendant and failed to present any options or a plan of action for the case. The letter alleged that when Kelley first met with the defendant, Kelley laughed and joked about previously prosecuting the defendant and sending him to the DOC. Finally, the letter alleged that the defendant was forced into accepting Kelley as his public defender, notwithstanding his multiple objections.

¶ 15     On October 26, 2017, James Kelley, on behalf of the defendant, filed a motion to withdraw guilty plea. The motion indicated that Kelley was unaware of the reasons the defendant wished to withdraw the plea. Accordingly, the motion requested the circuit court to allow the defendant to withdraw his plea or, in the alternative, to grant the defendant an extension of time to confer with counsel and subsequently file a complete motion to withdraw.

¶ 16     On October 30, 2017, the Honorable Richard Brown entered an order acknowledging the defendant's desire for appointed counsel and ordering attorney Jordan Gremmels to represent the defendant. On December 11, 2017, Gremmels filed on behalf of the defendant, *inter alia*, a motion to vacate guilty plea based on ineffective assistance of counsel. The motion alleged, *inter alia*, that the defendant felt pressured into accepting the terms of the plea agreement because James Kelley failed to investigate the merits of the defendant's case and failed to present any options to the defendant. The motion further alleged that Kelley's representation presented a conflict of interest and that the defendant's constitutional rights were violated because Judge Richard Brown presided over the proceedings despite the fact that he had represented the defendant as his public defender in the past.

¶ 17     On February 2, 2018, a hearing on the motion to vacate guilty plea was conducted before the Honorable Richard Brown, with Jordan Gremmels representing the defendant. We limit our

recitation of the evidence at the hearing to that which is relevant to the issue on appeal. The defendant testified that he was charged with burglary on June 26, 2017, entered a guilty plea on September 28, 2017, and subsequently filed a motion to vacate the guilty plea. The defendant testified that he never wanted James Kelley to represent him but "he was pretty much forced upon me, so we went from there." The defendant testified that Kelley failed to investigate the merits of the case because there was a video of the defendant, but Kelley neither watched it nor allowed the defendant to watch it.

¶ 18    The defendant testified that Kelley failed to explore any options besides pleading guilty because, according to Kelley, the State would not agree to anything other than five years in the DOC. The defendant explained that the day before the instant case commenced, he was sentenced to probation and ordered to undergo psychological and drug evaluations, but Kelley did not utilize that information to benefit the defendant in the plea negotiations in the instant case. The defendant testified that the first day Kelley visited him in the county jail, Kelley bragged that he previously sent him to the DOC. The defendant testified that Kelley's statement was inaccurate because in 2006, Kelley "tried to prosecute me, but I won the case, but—so it was always a conflict with me and Kelley, you know." Accordingly, the defendant believed that a conflict was presented by Kelley's past prosecution of him.

¶ 19    In summary, the defendant testified that Kelley provided ineffective assistance of counsel, that he was not given enough time to understand the terms and consequences of his guilty plea, and that a conflict of interest existed because Kelley previously prosecuted him. When questioned about the allegations regarding Judge Richard Brown, the defendant responded, "I don't think that's quite an issue more than my counsel" and "I just don't have an issue with Judge Brown."

¶ 20   The defendant testified on cross-examination that he immediately had a problem with James Kelley representing him. He confirmed that he was arrested in the instant case on June 23, 2017. The defendant testified that, although Kelley represented him until he pled guilty on September 28, 2017, he emphasized that Kelley was not his lawyer at first, that he did not want him, and that he "was pretty much forced upon me."

¶ 21   The defendant agreed that he represented himself in a separate matter the day before his arrest in the instant case, pled guilty in that matter, and was sentenced to probation. He testified that he was admonished and proceeded through that entire case without an attorney. When questioned why he did not elect to represent himself in the instant case, the defendant testified that we "were before the other judge, and he gave me some time because I didn't want Kelley at first, so he pushed it back. We had another court date. Judge Brown gave me Kelley. I didn't want Kelley then."

¶ 22   The State questioned the defendant about the plea hearing as follows:

"Whenever you stood up before the Court at that very lectern on September 28, 2017, whenever you pled guilty, you could have risen [*sic*] your hand, because judges have done it in the past in this county, and said, Judge, I don't want Mr. Kelley. I want to represent yourself [*sic*]. And you have a constitutional right to do that and could have done that if you felt you were getting railroaded that day. Is that not true, Tommy?"

The defendant replied, "Yeah, that's correct what you said."

¶ 23   When questioned about a video allegedly depicting him taking a gas can from a garage, the defendant responded, "I don't know. I haven't seen no video [*sic*]. I haven't seen a video." The defendant recalled speaking with the Sparta Police Department on the day of his arrest. He

9

confirmed that he admitted to the police that he took the gas can from the garage because he needed the fuel to cut grass for money.

¶ 24    At the conclusion of the hearing, the circuit court did not address the conflict of interest allegations in the motion to vacate guilty plea, but addressed the ineffective assistance of counsel claim in the motion by applying the two-prong test for such claims (see *Strickland v. Washington*, 466 U.S. 668 (1984)) and observed that the defendant had admitted to committing the burglary. The circuit court stated, "[T]he motion should fail because if the—if the defendant admitted that he, in fact, committed a burglary, I don't believe that he—in no way can he meet the test that's necessary for the Court to allow him to withdraw his plea of guilty.  For that reason, the motion is denied."  On February 8, 2018, the circuit court entered the order denying the defendant's motion to vacate guilty plea.  The defendant filed a timely notice of appeal.

¶ 25                                  ANALYSIS

¶ 26    The sole issue the defendant raises on appeal is whether the circuit court erred by denying the defendant's motion to vacate guilty plea because he was denied the effective assistance of counsel due to an actual conflict of interest.

¶ 27                           I. Standard of Review

¶ 28    In order to determine whether the circuit court's decision to deny the defendant's motion to vacate guilty plea was proper, we must first determine whether James Kelley was operating under a conflict of interest.  Our standard of review is twofold.  The determination of whether an attorney was operating under a conflict of interest is reviewed *de novo*.  *People v. Garcia*, 2018 IL App (5th) 150363, ¶ 26.  However, "[t]he decision to grant or deny a motion to withdraw a guilty plea rests in the sound discretion of the circuit court and, as such, is reviewed for abuse of discretion."  *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009).

10

¶ 29                    II. Duty to Investigate Conflict of Interest Claims

¶ 30    Before considering whether James Kelley was operating under a conflict of interest, we first address the defendant's claim that the circuit court failed to fulfill its duty to investigate the defendant's conflict of interest allegations. In *People v. Spreitzer*, 123 Ill. 2d 1, 18 (1988), the supreme court observed that if a potential conflict is brought to the attention of the circuit court at an early stage, a duty is triggered for the circuit court "to either appoint separate counsel or to take adequate steps to ascertain whether the risk of conflict was too remote to warrant separate counsel." "If such steps are not taken, the fact of a '*potential* or *possible* conflict may deprive the defendant of the guaranteed assistance of counsel.' " (Emphases in original.) *Id*. (quoting *People v. Jones*, 121 Ill. 2d 21, 28 (1988)). However, "[b]are allegations of a conflict are not enough." *People v. Hardin*, 217 Ill. 2d 289, 302 (2005). A defendant must raise specific facts supporting the existence of a conflict before a duty devolves on the circuit court "to conduct an inquiry to determine the necessity of appointing alternate counsel." *People v. Vaughn*, 200 Ill. App. 3d 765, 769 (1990).

¶ 31    Here, the defendant argues that although the circuit court "was advised multiple times by [the defendant] that he did not want Kelley, that he did not trust Kelley, and that Kelley had prosecuted him in the past," the circuit court "did not inquire of Kelley whether he was able to perform his professional duties in light of the apparent animosity between him and [the defendant]." Accordingly, citing *Spreitzer*, the defendant contends that reversal is required without a showing of specific prejudice to the defendant because the allegations of a potential conflict were raised early in the proceedings, but the circuit court failed to alleviate the potential conflict by addressing the allegations. 123 Ill. 2d at 18. We disagree.

11

¶ 32                                      A. *First Appearance*

¶ 33    The defendant contends that the circuit court was advised of a conflict of interest at the defendant's first appearance, but the "circuit court took no action to alleviate the problem."  Judge Gross presided over the defendant's first appearance.  The defendant made no mention of a conflict of interest to Judge Gross, but indicated, rather, that he did not want the public defender appointed "because they're not going to fight for me."  The circuit court advised the defendant that he could represent himself, but the defendant objected because "they have no lawbooks downstairs."  More than once, the defendant stated, "I don't know what to do."  Accordingly, the defendant was granted one week to decide.

¶ 34    "[A] criminal defendant has no right to choose his or her court-appointed counsel or insist on representation by a particular public defender."  *People v. Abernathy*, 399 Ill. App. 3d 420, 441 (2010).  At his first appearance, the defendant merely informed the circuit court that he did not want the public defender to represent him.  This does not satisfy the prerequisite to assert specific facts that support the existence of a conflict in order to trigger the circuit court's duty to investigate the allegations.  See *Vaughn*, 200 Ill. App. 3d at 769.  The defendant's unwillingness to be represented by the public defender did not amount to a conflict of interest, as the defendant had no right to choose his appointed counsel.  See *Abernathy*, 399 Ill. App. 3d at 441.

¶ 35    Besides objecting to being represented by the public defender, the defendant's only other protest to Judge Gross was that he did not wish to proceed *pro se* because he had no access to lawbooks.  These comments likewise do not support the existence of a conflict to trigger the circuit court's duty to investigate the allegations.  *Vaughn*, 200 Ill. App. 3d at 769.  "[A]n incarcerated *pro se* defendant does not possess a right of access to a complete jail library[.]"  *People v. Uppole*, 228 Ill. App. 3d 281, 285 (1992).  Moreover, " '[w]here a prisoner in custody knowingly and

12

voluntarily elects to manage his own defense, he relinquishes many of the traditional benefits associated with the right to counsel.' " *Id.* (quoting *People v. Heidelberg*, 33 Ill. App. 3d 574, 591 (1975)). We find no facts were asserted to obligate Judge Gross to investigate any potential conflict of interest.

¶ 36                                    B. *Status Hearing*

¶ 37    Judge Brown presided over the status hearing that followed the first appearance. There, the circuit court informed the defendant that the only way another defender could be appointed was if there was a conflict of interest with Kelley. The defendant responded that a conflict of interest existed because Kelley prosecuted him in the past. The circuit court addressed the matter and found no conflict of interest because Kelley was not prosecuting the defendant in the instant case. The circuit court appointed Kelley to represent the defendant and informed the defendant that the option remained for him to proceed *pro se*.

¶ 38    Contrary to the defendant's arguments, when the circuit court learned that Kelley previously prosecuted the defendant, it alleviated the potential conflict by ascertaining that the risk of conflict was too remote to warrant separate counsel. See *Spreitzer*, 123 Ill. 2d at 18. This was evinced by the circuit court's statement that Kelley was not prosecuting the defendant in the instant case. "[N]o conflict of interest arises where counsel for the defendant prosecuted and defended [the] defendant in different unrelated cases." *People v. Hoskins*, 73 Ill. App. 3d 739, 742 (1979). A conflict of interest is avoided if the cases are isolated from each other in all respects. *Id.* "[A] trial court is presumed to know the law and apply it properly." *People v. Phillips*, 392 Ill. App. 3d 243, 265 (2009).

¶ 39    Here, the circuit court indicated its knowledge of the law by informing the defendant, "[T]hat's not what the law says. I have to follow the law." The record shows that Judge Brown

13

was the public defender prior to Kelley and he was aware when Kelley became the public defender. The record further shows that Kelley prosecuted the defendant in 2006 and was appointed as defense counsel in the instant case in 2017. These two cases were 11 years apart and Judge Brown knew that the cases were not connected in any way. For these reasons, we find that the circuit court fulfilled its duty to alleviate the potential conflict by observing the law and concluding that any risk of conflict from Kelley's prior prosecution was too remote to warrant new counsel. See *Spreitzer*, 123 Ill. 2d at 18.

¶ 40     Besides the prior prosecution, the defendant asserts on appeal that although he advised the circuit court multiple times that he neither wanted nor trusted Kelley, the circuit court "did not inquire of Kelley whether he was able to perform his professional duties in light of the apparent animosity between him and [the defendant]." The defendant stated at the status hearing that he and Kelley "kind of clashed a little bit" when Kelley formerly represented him. A defendant has no right to representation of his choosing, "or by counsel with whom the defendant has an amicable rapport." *Hardin*, 217 Ill. 2d at 300. Moreover, there is "no authority which will permit us to equate a 'personality clash' between an attorney and his client with a 'conflict' or 'potential conflict of interest' as recognized under Illinois law." *People v. Coleman*, 203 Ill. App. 3d 83, 99 (1990); see also *People v. Stanford*, 2011 IL App (2d) 090420, ¶ 29 (no conflict of interest where defendant asserted that he and his appointed counsel were not on the same level and did not see eye to eye). Because the alleged animosity between the defendant and Kelley did not establish a conflict, the circuit court was under no obligation to make any inquiry regarding the same. See *Vaughn*, 200 Ill. App. 3d at 769.

¶ 41     Having concluded that Judge Brown fulfilled his duty to alleviate the potential conflict that was brought to his attention early in the proceedings, we find it noteworthy to recognize that after

14

the defendant filed his *pro se* motion to withdraw guilty plea in which he alleged ineffective assistance of counsel, Judge Brown promptly entered an order acknowledging the defendant's desire for appointed counsel and ordering attorney Jordan Gremmels to represent him. The record reflects that Judge Brown conducted the proceedings appropriately and fulfilled every requirement from the time the defendant first appeared before him until new counsel was appointed.

¶ 42                    III. Legal Standard on Motion to Vacate Guilty Plea

¶ 43    Before proceeding to the conflict of interest issue, we address the defendant's contention that the circuit court applied the incorrect standard when it denied the motion to vacate guilty plea. At the hearing on the motion to vacate, the circuit court addressed the ineffective assistance of counsel allegations, applied the *Strickland* test, and denied the motion because the defendant could not establish prejudice, as he had admitted to the police that he took the gas can. See 466 U.S. at 687. The circuit court ended its inquiry with the *Strickland* test and denied the motion to vacate on that basis.

¶ 44    The defendant argues that prejudice is not to be considered when determining whether a conflict of interest exists. *People v. Taylor*, 237 Ill. 2d 356, 375 (2010). Although this principle would apply to cases where the conflict of interest issue was not raised early in the proceedings (see *Spreitzer*, 123 Ill. 2d at 18), in this case, the circuit court was under no obligation to reconsider the conflict of interest issue because it had already addressed it at the status hearing and concluded that no conflict existed. The only assertion regarding conflict of interest in the motion to vacate that was not raised at the status hearing was the defendant's claim that Kelley laughed about previously prosecuting him. This isolated comment may infer, at best, the existence of a personality clash which we previously concluded does not create a conflict of interest. See *Coleman*, 203 Ill. App. 3d at 99.

15

¶ 45 The motion to vacate guilty plea separated the ineffective assistance of counsel claim from the conflict of interest claim. Because the circuit court had already considered the conflict of interest claim, the only outstanding issue to address at the hearing on the motion to vacate guilty plea was whether the defendant received ineffective assistance of counsel, to which *Strickland* was correctly applied. See 466 U.S. at 687. For these reasons, we reject the defendant's argument that the circuit court applied the incorrect standard when it denied the motion to vacate.

¶ 46                                IV. Conflict of Interest

¶ 47 Turning now to the issue on appeal, the defendant contends that he received ineffective assistance of counsel because James Kelley was operating under an actual conflict of interest. "The right to effective assistance of trial counsel comes from the sixth amendment and includes the correlative right to conflict-free representation." *Hardin*, 217 Ill. 2d at 299. "To show an actual conflict of interest, a defendant must point to 'some specific defect in his counsel's strategy, tactics, or decision making *attributable to [a] conflict*.' " (Emphasis added and internal quotation marks omitted.) *Garcia*, 2018 IL App (5th) 150363, ¶ 34 (quoting *People v. Morales*, 209 Ill. 2d 340, 348-49 (2004), quoting *Spreitzer*, 123 Ill. 2d at 18). "In other words, a defendant 'need not prove prejudice in that the conflict contributed to the conviction, but it is necessary to establish that an actual conflict of interest adversely affected the lawyer's performance.' " *Id.* (quoting *People v. Austin M.*, 2012 IL 111194, ¶ 82).

¶ 48 Here, the defendant argues that his plea was not knowing and voluntary because James Kelley provided ineffective assistance of counsel due to his operating under an actual conflict of interest. See *People v. Boyd*, 2018 IL App (5th) 140556, ¶ 16 (whether defendant's plea was knowing and voluntary depends on whether defendant was provided effective assistance of counsel). In particular, the defendant contends that Kelley was operating under an actual conflict

16

of interest because of his own self-interest. See *Garcia*, 2018 IL App (5th) 150363, ¶ 48 (conflict of interest exists where loyalty is divided between defendant's interests and counsel's self-interests).

¶ 49 The defendant contends that Kelley's self-interest from past feelings toward him prevented Kelley from fulfilling his duties and resulted in ineffective assistance of counsel due to an actual conflict of interest. The defendant contends that there were several defects in Kelley's strategy and decision making. He alleges that Kelley failed to investigate the merits of the case because he never reviewed the video. He further alleges that Kelley failed to use the defendant's probation terms from a previous case and failed to enter an open guilty plea to allow for the presentation of mitigating evidence in an effort to reduce the sentence in the instant case.

¶ 50 While we acknowledge the defects alleged by the defendant, we do not agree that the alleged defects could have been attributable to any conflict of interest. See *id.* ¶ 34. As already established, Kelley's prior prosecution of the defendant in a separate, unrelated case created no conflict of interest. See *Hoskins*, 73 Ill. App. 3d at 742. Moreover, the record contains pleadings and transcripts of proceedings at which Kelley represented the defendant. Kelley waived a preliminary hearing on the defendant's behalf, represented the defendant at the plea hearing, and filed a motion to withdraw guilty plea after the defendant filed his *pro se* motion to withdraw guilty plea. The record reveals no inappropriate conduct or comments by Kelley, nor any evidence to suggest that a conflict of interest existed. We are further mindful that it was the defendant's burden to prove the merits of his motion to vacate guilty plea. The defendant could have called Kelley to the stand to question him about any conflict of interest but failed to do so. Because we find the record devoid of evidence that a conflict of interest existed, any alleged defects in Kelley's performance could not have been attributable to a conflict. *Hernandez*, 231 Ill. 2d 134, 144 (2008).

17

¶ 51 Although the defendant claims on appeal that he was pressured into pleading guilty, the transcript of the plea hearing reflects that the defendant was thoroughly admonished, was given the chance to voice any complaints about Kelley, and replied in the negative when asked if he was in any way forced or pressured into pleading guilty. The defendant was advised throughout the case that the option remained for him to relieve Kelley and proceed *pro se*, but he never exercised that option. The circuit court found, and the record supports, that the defendant entered into the guilty plea knowingly and voluntarily. Because we find no ineffective assistance of counsel due to an actual conflict of interest, we conclude that the circuit court did not abuse its discretion in denying the defendant's motion to vacate guilty plea.

¶ 52                                    CONCLUSION

¶ 53 For the foregoing reasons, we affirm the circuit court's February 8, 2018, order.


¶ 54 Affirmed.

18